# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LISA CALHOUN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 07-86 |
| | ) | |
| v. | ) | Judge McVerry |
| | ) | Magistrate Judge Caiazza |
| KLINGENSMITH HEALTHCARE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

### I. RECOMMENDATION

Lisa Calhoun ("Plaintiff" or "Calhoun") alleges that she suffered discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111 et seq., when her employer, Klingensmith Healthcare, Inc. ("Defendant" or "Klingensmith"), failed to accommodate her after surgery to remove her gallbladder, and terminated her employment because it perceived her to be disabled. (Doc. 1 at pp. 3-4). She makes identical supplemental claims pursuant to the Pennsylvania Human Relations Act ("PHRA"), 42 Pa. Cons. Stat. § 955 et seq.[1] Klingensmith's Motion for Summary Judgment (Doc. 29) is pending. For the reasons that follow, it is respectfully recommended that the Motion be granted.

---

1. The PHRA claim need not be discussed separately as an "analysis of the ADA claim applies equally to a PHRA claim." Williams v. Philadelphia Housing Authority Police Dept., 380 F.3d 751, 761 n.6 (3d Cir. 2004)(quoting Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 306 (3d Cir. 1999)).

-1-

## II. REPORT

### A. Background

Klingensmith, a corporation located in Ford City, Pennsylvania, rents and sells medical equipment. The Plaintiff was hired in 1992 as one of Klingensmith's Accounts Receivable Specialists in its Reimbursement Department. (Doc. 32-2 at p. 5). She held this position until 2001, when she was promoted to "Reimbursement Supervisor." (Id. at p. 6). Calhoun held the Reimbursement Supervisor position until October of 2005. (Id.).

As a result of an October 2005 realignment by Klingensmith, Plaintiff's job was re-named "Medical Documentation Supervisor," and she held that position until the termination of her employment on March 30, 2006. (Doc. 31 at ¶ 32; Doc. 32-2 at pp. 7, 9). As part of Klingensmith's annual review process, Calhoun was given am annual performance review in June 2005 for the performance year June 2004 through June 2005. (Doc. 32-2 at p. 15; Doc. 32-7 at pp. 4-6). That review was less than satisfactory. (See generally Doc. 31 at pp. 5-6; Doc. 32-2 at p. 20).

In order to obtain payment for the equipment that it rents or sells, Klingensmith must often engage in a rather complicated procedure to obtain the proper paperwork. As Medical Documentation Supervisor, one of Plaintiff's primary responsibilities was to ensure that Klingensmith had obtained the

proper authorization so that it might collect on its bills. (Doc. 31 at pp. 13-18).

Calhoun claims that in October 2005 she began to experience pain. (Doc. 1 at ¶ 9; Doc. 32-4 at p. 20). She had her gallbladder removed on December 29, 2005 as an outpatient, but alleges that this did not resolve the pain in her side. (Doc. 32-5 at p. 2; Doc. 32-6 at p. 3). On January 11, 2006, Plaintiff returned to work with a medical note from the doctor who had removed her gallbladder, releasing her to return to work at full duty, without any restrictions whatsoever. (Doc. 33-5 at p. 2; Doc. 32-5 at p. 90). Accordingly, Calhoun was restored to her former position with full responsibility. (Doc. 32-5 at p. 9).

Despite her surgery, the pain in Plaintiff's side continued. Between October 2005 and March 2006, the severity of the pain was not constant, but would change - some days it was worse than others. (Id.). Plaintiff testified that she made several requests for accommodations due to the continuing pain. She asked that she be allowed to meet with employees under her supervision in a conference room rather than having to walk to each of their desks individually. (Doc. 32-4 at pp. 13-14). This request was denied, allegedly because the conference room was needed for other purposes during the day. (Doc. 32-4 at p. 14). Additionally, Plaintiff testified that applying ice on her side helped to alleviate the pain. Although Defendant Klingensmith permitted Calhoun to alleviate her pain in this fashion, and even

allowed her to use the company ice machine, she felt pressured not to access it. (Doc. 32-4 at p. 15). Despite the circumstances, Calhoun continued in her position as "Medical Documentation Supervisor" until March 2006.

As a result of the continued pain after her gallbladder was removed, on March 24, 2006, Plaintiff's treating physician informed her that he recommended a biopsy to screen her for cancer. (Doc. 40 at p. 9; Doc. 32-3 at p. 20). Plaintiff immediately informed her co-workers and supervisors of this development. (Doc. 32-6 at p. 2). Calhoun's employment with Klingensmith was subsequently terminated on March 20, 2006. (Id.).

Also in March 2006, David Knepshield, the President of Klingensmith, expressed concern and displeasure to Plaintiff over the large number of hold bills in her Department. (Doc. 38-2 at p. 3; Doc. 32-4 at pp. 11-12). When Plaintiff assumed the position of Medical Documentation Supervisor in October 2005, a large number of bills were already on hold. (Doc. 32-4 at p. 11). Calhounn admits, however, that from January through March 2006, the number of hold bills increased every month. (Doc. 32-3 at p. 9). When her supervisors noticed this sharp increase, a full investigation was conducted concerning the deleted bills. (Doc. 35-2 at p. 18). Upon reviewing and confirming the results of the investigation, Calhoun's supervisors concluded that she had, in direct violation of Klingensmith's policy and practice,

deleted a large number of bills for which Klingensmith was unable to collect payment. (Id. at pp. 18-20). As a result, Calhoun's employment with Klingensmith was terminated, effective March 30, 2006. (Doc. 35-2 at p. 23); Doc. 33-2 at p. 5; Doc. 32-3 at p. 5).

On January 22, 2007, Calhoun filed this action, alleging disability discrimination under the ADA and the PHRA. (Doc. 1). The case was referred to this Court on January 24, 2007 (Doc. 2), and the instant Motion for Summary Judgment was filed by Defendant Klingensmith on January 15, 2008. (Doc. 29).

## B. Standard of Review

Summary judgment is appropriate only where the pleadings, depositions, answers to interrogatories, admissions on file, and material fact demonstrate that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The mere existence of some evidence favoring the non-moving party will not defeat the motion. There must be enough evidence with respect to a particular issue to enable a reasonable jury to find in favor of the non-moving party. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).

In response to a motion for summary judgment, the non-moving party must "designate specific facts showing there is a genuine issue for trial." Celotex, 477 U.S. at 324. "Speculation and

conclusory allegations do not satisfy this duty." <u>Ridgewood Bd. of Educ. v. N.E. ex rel. M.F.</u>, 172 F.3d 238, 252 (3d Cir. 1999). A motion for summary judgment will be granted when the materials in the record, if reduced to admissible evidence, would be insufficient to satisfy the non-moving party's burden at trial. <u>Celtox</u>, 477 U.S. at 322.

### C. **Elements of a Prima Facie Case Under the ADA**

The ADA was enacted to prohibit an employer from discriminating "against a qualified individual with a disability because of the disability. . .with regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

In cases arising under the ADA, courts use the three-part burden-shifting analysis for allocating the burdens of proof set out in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). This analysis was originally developed for employment discrimination cases arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq. See* <u>Robinson v. Lockheed Martin Corp.</u>, 212 Fed. Appx. 121, 123 (3d Cir. 2007); <u>Newman v. GHS Osteopathic, Inc.</u>, 60 F.3d 153, 157-58 (3d Cir. 1995). Under this framework, the plaintiff has the initial burden of establishing a *prima facie* case of discrimination. *See* <u>McDonnell Douglas</u>, 411 U.S. at 802. If plaintiff succeeds in establishing a *prima facie* case, the burden then shifts to the employer to

"articulate some legitimate, non-discriminatory reason for the employee's rejection." Id. Finally, should the defendant carry this burden, the plaintiff then has the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. Jones v. School Dist., 198 F.3d 403, 410 (3d Cir. 1999)(citing Texas Dept. of Cnty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981)).

To make out a *prima facie* case under the ADA, the plaintiff must show that she: (1) has a "disability" as defined by the ADA; (2) is a "qualified individual;" and (3) has suffered an "adverse employment decision" because of her disability. Turner v. Hershey Chocolate U.S., 440 F.3d 604, 611 (3d Cir. 2006). The term "disability" means, with respect to an individual:

> (A) a physical or mental impairment that substantially limits one or more major life activities of such individual;
> (B) a record of such impairment; or
> (C) being regarded has having such an impairment.

42 U.S.C. § 12102(2).

### D. Legal Analysis

Calhoun explicitly confirmed under oath that her disability discrimination claim in this case is based solely on an alleged "perceived disability," and that she is not claiming that she actually had or has a protected physical or mental disability. (Doc. 32-6 at pp. 8-9, 14). Thus, in order to satisfy the first

prong on her prima facie case, she must show that Klingensmith perceived her to have a medical condition that arose to the level of a protected disability under the law.

Here, Calhoun's burden is a difficult one. The United States Supreme Court has stated that: "[t]here are two apparent ways in which individuals may fall within [the statute's "regarded as" definition of disability]:

> (1) a covered entity mistakenly believes that a person has a[n]...impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, non-limiting impairment substantially limits one or more major life activities. In both cases, it is necessary that a covered entity entertain misperceptions about the individual - it must believe either that one has a substantially limiting impairment that one does not have, or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting.

Sutton v. United Airlines, 527 U.S. 471, 489 (1989); *see also*, Tice v. Centre Area Transp. Authority, 247 F.3d 506, 514 (3d Cir. 2001); Speer v. Norfolk Southern Railway Corp., 121 Fed. Appx. 475, 477 (3d Cir. 2005).

It is well-established that mere awareness of an impairment is insufficient, as a matter of law, to establish the *prima facie* elements of a perceived disability claim. "[T]he mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate either that the employer regarded the employee as disabled, or that the perception caused the adverse employment

action." Benko v. Portage Area Sch. Dist., 241 Fed. Appx. 842, 845 (3d Cir. 2007)(internal citations omitted); Robinson, 212 Fed. Appx. at 125. Moreover, it is also insufficient as a matter of law for Calhoun merely to show that Defendant Klingensmith perceived her to be physically impaired in some way. Rather, she must show that Klingensmith believed that she suffered from an impairment that rose to the level of a protected disability within the meaning of the statute:

> It is insufficient for the [plaintiffs in perceived disability cases] to show that [their employers] thought they were, in some way, impaired. Rather, the [plaintiffs] must show that [their employers] thought that they were disabled "within the meaning of the statute."

Wilson v. MVM, Inc., 475 F.3d 166, 179 (3d Cir. 2007); Robinson, 212 Fed. Appx. at 125 (stating that "the employer must regard the employee to be suffering from an impairment within the meaning of the statutes, not just that the employer believed the employee to be somehow disabled."); Murphy v. United Parcel Serv., 527 U.S. 516, 522-23 (1999)(holding that "working" must encompass "either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable thinking, skills, and abilities.").

Said differently, Calhoun must prove that Klingensmith perceived that she suffered from a physical or mental impairment that substantially limited one or more of her major life activities. *See* 42 U.S.C. § 12102(2); Wilson, 475 F.3d at 179;

Robinson, 212 Fed. Appx. at 125. Summarizing relevant case law, the Court of Appeals for the Third Circuit recently emphasized that this standard is a difficult one to satisfy: "[W]e have held only extremely limiting disabilities -in either the short or long-term- qualify for protected status under the ADA." Marinelli v. City of Erie, 216 F.3d 354, 362 (3d Cir. 2000). An analysis under this framework focuses not on the Plaintiff and her actual abilities, "but rather on the reactions and perceptions of the persons interacting and working with [her]." Kelly v. Drexel Univ., 94 F.3d 102, 109 (3d Cir. 1996)(internal citations omitted). Thus, as Calhoun acknowledges, ". . . the question is whether the Defendant regarded this condition as substantially limiting Plaintiff in a major life activity." (Doc. 40 at p. 6)(citing Sutton, 527 U.S. at 489).

Initially, the court observes Calhoun's burden to produce evidence relating to "the reactions and perceptions" of the people with whom she worked. That being said, Calhoun chose not to depose any Klingensmith employees throughout the course of the discovery phase of this litigation. Instead, she noticed the depositions of numerous Klingensmith employees, but opted to cancel them. (Doc. 30 at p. 5). As a direct result, the conclusions of the actual decision-makers set out in the affidavits submitted in support of Klingensmith's summary judgment motion are uncontradicted: they did not perceive Calhoun to have any disability. See Allen Aff. (Doc. 36-2 at ¶ 50);

Knepshield Aff. (Doc. 38-2 at ¶ 6); Cravener Aff. (Doc. 36-2 at ¶ 12); Fisher Aff. (Doc. 38-3 at ¶ 9); Williams Aff. (Doc. 38-5 at ¶ 3).

Next, Calhoun identifies only one major life activity in which she claims Klingensmith perceived her to be substantially limited, *i.e.*, working. (Doc. 40 at p. 11). She offered no evidence showing that Klingensmith perceived her to be substantially limited in any other major life activity. Calhoun's entire claim, then, is limited to one issue -whether Klingensmith believed her to be substantially limited in her ability to work.

To establish the first part of her *prima facie* case - showing that her employer perceived her to be substantially limited in the major life activity of working - Calhoun must show that Klingensmith "'regarded her as precluded from [working] more than a particular job,' [but rather] unable to perform a broad class of jobs due to a perceived impairment." Varley v. Highlands Sch. Dist., 2007 U.S. Dist. LEXIS 75644, at *7-8 (W.D. Pa. Oct. 11, 2007)(internal quotation omitted). In the Third Circuit Court, it is well-established that when an employer returns an employee to work without restrictions following a medical leave, the employee is prevented from claiming that the employer perceived her to be disabled in the major life activity of working, because such facts establish that the employer perceived the employee to be fully capable of working and expected her to

return. *See, e.g.,* Robinson, 212 Fed. Appx. at 125 n.6; Benko, 241 Fed. Appx. at 847.

Indeed, this District Court very recently decided a nearly identical case. Peterman v. Allegheny Ludlum Corp., 2008 U.S. Dist. LEXIS 4201, at *11-12 (W.D. Pa. Jan. 18, 2008, McVerry, J.)(citation omitted)(employee's return to work without restrictions prevents employee from arguing that the employer perceived him as substantially limited in the major life activity of work). Here, Calhoun was returned to her position, without restriction, following the removal of her gallbladder. As such, and in keeping with this Court's established jurisprudence, it is clear that Calhoun is unable to prove even the first prong of her *prima facie* case.

In sum, the record in this case demonstrates that the "perceived disability" claim must fail. Calhoun never deposed a Klingensmith employee and, consequently, the Defendant's affidavits must stand unchallenged. Significantly, none admit to perceiving Calhoun as having a disability. Moreover, Calhoun returned to work without any restrictions several months prior to her termination. A review of the record here reveals no evidence showing that an actual perceived disability played any role in Klingensmith's firing of Plaintiff. Because Calhoun has failed to establish the first prong of her requisite *prima facie* showing, no further analysis is necessary and the court recommends that the Defendant's Motion for Summary Judgment be granted.

## III. CONCLUSION

Because Calhoun has failed to make an adequate showing that her employer perceived her to have a disability that substantially limited any major life activity, she has failed to establish that she was disabled within the meaning of the ADA.

Accordingly, it is respectfully recommended that Defendant's Motion for Summary Judgment (Doc. 29) be **GRANTED**.

In accordance with the Magistrate's Act, 28 U.S.C. § 636 (b)(1)(B) and (C), and Rule 72.1.4 (B) of the Local Rules for Magistrates, objections to this Report and Recommendation are due by May 16, 2008. Responses to objections are due by May 27, 2008.

April 30, 2008

s/Francis X. Caiazza
Francis X. Caiazza
U.S. Magistrate Judge